## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,<br><br>       Debtor.[1] | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER<br>COOPERATIVE, INC.,<br><br>       Plaintiff,<br><br>v.<br><br>507 Capital LLC; 507 Summit LLC; Cetus<br>Capital VI, L.P.; Chase Lincoln First<br>Commercial Corporation; Citigroup Financial<br>Products Inc.; CrossingBridge Low Duration<br>High Yield Fund; Destinations Global Fixed<br>Income Opportunities Fund; Destinations Low<br>Duration Fixed Income Fund; Koch Energy<br>Services LLC; Leaffilter North Holdings, Inc.;<br>NJR Energy Services Co.; OFM II, LP; OU 2<br>LLC; RiverPark Short Term High Yield;<br>RiverPark Strategic Income Fund; Total Gas<br>& Power North America, Inc.; and Two Seas<br>Global (Master) Fund LP,<br><br>       Defendants. | Adv. Proc. No. 21-_____ (DRJ) |

## THE DEBTOR'S COMPLAINT FOR DECLARATORY RELIEF
## AND ASSERTING OMNIBUS OBJECTIONS TO
## PROOFS OF CLAIM RELATED TO NATURAL GAS SALES TO THE DEBTOR

Brazos Electric Power Cooperative, Inc. ("Brazos Electric" or the "Debtor") files this

omnibus objection and complaint (the "Complaint") objecting to the amounts and classification of

---

[1] The Debtor in this Chapter 11 case, along with the last four digits of its federal tax identification number is Brazos Electric Power Cooperative, Inc. (4729).  Additional information regarding this case may be obtained on the website of the Debtor's claims and noticing agent at http://cases.stretto.com/Brazos.  The Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

the proofs of claim filed by 507 Capital LLC (216); 507 Summit LLC (106); Cetus Capital VI, L.P. (113, 110, 214); Chase Lincoln First Commercial Corporation (335); Citigroup Financial Products Inc. (385); CrossingBridge Low Duration High Yield Fund (115, 207); Destinations Global Fixed Income Opportunities Fund (213); Destinations Low Duration Fixed Income Fund (114, 208); Koch Energy Services LLC ("Koch") (319); Leaffilter North Holdings, Inc. (110, 210); NJR Energy Services Co. ("NJR") (167); OFM II, LP (108, 110, 114, 115, 215); OU 2 LLC (211); RiverPark Short Term High Yield (113, 206); RiverPark Strategic Income Fund (212); Total Gas & Power North America, Inc. ("Total") (350); and Two Seas Global (Master) Fund LP (106) (collectively the "Gas Claimants").[2]  Each of these claims (the "Gas Claims") arose from sales of natural gas to the Debtor in February of 2021 during the extreme weather event known as "Winter Storm Uri".  A chart of the Gas Claims subject to the objections herein is attached as **Exhibit A**.

## I.        NATURE OF THE ACTION

1.        As further described herein, most of the Gas Claimants acquired their claims from the direct Gas Suppliers (defined below) and assert not only claims for exorbitant gas prices that constitute price gouging, but audaciously twist the knife in contending that the majority of such claims qualify under Section 503(b)(9) of the Bankruptcy Code for priority administrative status-- a status (above all other unsecured creditors) that is held only for the *value* of goods received by the Debtor within 20 days of the bankruptcy filing that were sold to the Debtor *in the ordinary course of the Debtor's business*.  Nothing that happened during the Winter Storm Uri state of emergency as proclaimed by both the President of the United States and the Governor of the State of Texas was in the Debtor's ordinary course of business.  Moreover, price gouging to the tune of

---

[2] Numbers in the parentheticals denote the claim number in the Debtor's official Claims Register.

35,000% above normal gas prices[3] does not reflect the true "value" of the gas received by the Debtor. The vast majority of the claims sought by the Gas Claimants is for extortionate transactions that forced the Debtor—a non-profit electric cooperative owned by its sixteen non-profit electric cooperative distribution members (the "Members")—to choose between paying as much as 35,000% above typical gas prices and potentially leaving many Texans without power during one of the worst winter-weather crises in United States history.  This kind of flagrant price-gouging of natural gas, which is critical to the generation of electricity at the Debtor's plants, is patently unjust to the Debtor, its Members, the Texas consumers who would ultimately have to bear the burden of such unconscionable prices, and many of the Debtor's other creditors that charged fair prices for their goods and services and did not use Winter Storm Uri as an excuse to pillage.

    2.      Moreover, the purported agreements underlying the Gas Claims are not enforceable as they are unconscionable, contrary to public policy, and were entered into under duress.  Namely, price-gouging consumers during a declared disaster is contrary to the Texas Deceptive Trade Practices Act ("DTPA").  Under the DTPA, a person commits price-gouging when it charges a price for a necessity, such as gas, that exceeds 15% of the price in the ordinary course of business.  On February 12, 2021, Texas Governor Greg Abbott issued a Disaster Declaration stating that Winter Storm Uri posed "an imminent threat of widespread and severe property damage, injury, and loss of life."[4]  The Gas Suppliers chose to exacerbate this disaster by charging as much **35,000%** above the average price of gas charged to the Debtor in the ordinary course of business.  As the Gas Claimants were well aware, Brazos, a non-profit, could only pay these exorbitant Gas

---

[3] Discussions of gas prices on a given date in this Complaint refer to the date on which an order for gas was made not the date of delivery of that gas.

[4] Available at:   https://gov.texas.gov/news/post/governor-abbott-issues-disaster-declaration-in-response-to-severe-winter-weather-in-texas

Claims by passing them along to its non-profit Members, which would have to further pass them along to their consumer members in the form of increased rates. It would be contrary to the spirit of the DTPA for Brazos and its Members to be forced to pass along such flagrant price-gouging to consumers, thus rendering the purported agreements underlying the Gas Claims not enforceable.

3. Additionally, the claims ostensibly created by the Gas Claimants' price-gouging constitute fraudulent obligations because (a) the Debtor did not receive reasonably equivalent value in exchange; (b) the Debtor voluntarily or involuntarily became insolvent as a result of such obligations; (c) the Debtor was left with unreasonably small capital with which to engage in ongoing business and transactions and pay debts in the ordinary course of business; and (d) these debts were incurred during a period where the Debtor was incurring debts it could not pay in an effort to protect consumers from life threatening conditions.

4. For these reasons, the Debtor requests that this Court (a) materially reduce the Gas Claims to a fair and reasonable amount as determined by this Court and (b) reclassify the Gas Claims, to the extent allowed, as general unsecured claims that do not qualify for administrative expense status under Section 503(b)(9) of the Bankruptcy Code.

## II.   THE PARTIES

5. Plaintiff Brazos Electric is a Texas non-profit electric cooperative corporation pursuant to Section 161.059 of the Texas Utilities Code, located at 7616 Bagby Ave. Waco, Texas 76712. It is owned by its sixteen member cooperatives (collectively, the "Members"), which are also non-profit electric cooperative corporations. On March 1, 2021 (the "Petition Date"), Brazos Electric filed a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Brazos Electric is operating its business and managing its properties as debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

6.      507 Capital LLC has purchased claims that derive from natural gas sales to the Debtor by Mercuria Energy America, LLC ("Mercuria").  It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

7.      507 Summit LLC has purchased claims that derive from natural gas sales to the Debtor by Concord Energy LLC ("Concord").  507 Summit LLC has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

8.      Cetus Capital VI, L.P. has purchased claims that derive from natural gas sales to the Debtor by Concord and Mercuria.  Cetus Capital VI, L.P. has appeared in this bankruptcy proceeding and may be served with process by serving the parties it has designated to receive notices:  Brian Stout, 8 Sound Shore Drive, Suite 303, Greenwich, CT 06830 and Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

9.      Chase Lincoln First Commercial Corporation has purchased claims that derive from natural gas sales to the Debtor by Tenaska Marketing Ventures ("Tenaska").  It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  David Wender, Alston & Bird LLP, 1201 W. Peachtree Street, Altanta, GA 30309.

10.     Citigroup Financial Products Inc. has purchased claims that derive from natural gas sales to the Debtor by ETC Marketing, Ltd. ("ETC").  It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Timothy A. Davidson II, Hunton Andrews Kurth, LLP,  600 Travis Street, Suite 4200, Houston, TX 77002.

11.     CrossingBridge Low Duration High Yield Fund has purchased claims that derive from natural gas sales to the Debtor by Concord. It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

12.     Destinations Global Fixed Income Opportunities Fund has purchased claims that derive from natural gas sales to the Debtor by Mercuria.  It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices: Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

13.     Destinations Low Duration Fixed Income Fund has purchased claims that derive from natural gas sales to the Debtor by Concord. It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

14.     Koch sold natural gas to the Debtor.  It has appeared in this bankruptcy proceeding and may be served with process by serving its counsel of record:  David Wender, Alston & Bird LLP, 1201 W. Peachtree Street, Atlanta, GA 30309.

15.     Leaffilter North Holdings, Inc. has purchased claims that derive from natural gas sales to the Debtor by Concord.  It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

16.     NJR sold natural gas to the Debtor.  It has appeared in this bankruptcy proceeding and may be served with process by serving its counsel of record:  Mark B. Conlan, Gibbons P.C., One Gateway Center, Newark, New Jersey 07102-5310.

17.     OFM II, LP has purchased claims that derive from natural gas sales to the Debtor by Concord and Mercuria.  OFM II, LP has appeared in this bankruptcy proceeding and may be served with process by serving the parties it has designated to receive notices:  Brian Stout, 8 Sound Shore Drive, Suite 303, Greenwich, CT 06830 and Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

18.     OU 2 LLC has purchased claims that derive from natural gas sales to the Debtor by Mercuria.  It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

19.     RiverPark Short Term High Yield has purchased claims that derive from natural gas sales to the Debtor by Concord and Mercuria.  RiverPark Short Term High Yield has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

20.     RiverPark Strategic Income Fund has purchased claims that derive from natural gas sales to the Debtor by Mercuria.  It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

21.     Total sold natural gas to the Debtor.  It has appeared in this bankruptcy proceeding and may be served with process by serving its counsel of record:  Joseph Burfitt, Managing Counsel, Total Gas & Power North America, Inc., 1201 Louisiana Street, Suite 1400, Houston, TX 77002.

22.     Two Seas Global (Master) Fund LP has purchased claims that derive from natural gas sales to the Debtor by Concord. It has appeared in this bankruptcy proceeding and may be served with process by serving the party it has designated to receive notices:  Jeffrey Chubak, Amini LLC, 131 West 35th Street, 12th Floor, New York, NY 10605.

### III.     JURISDICTION, VENUE, AND AUTHORITY

23.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334.

24.     Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

25.     The bases for the relief requested herein are Sections 105(a), 502, 503, 544, 548, and 1107 of the Bankruptcy Code, Rules 3007, 3012, and 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Bankruptcy Local Rules (the "Local Rules").

26.     This matter is a core proceeding pursuant to 28 U.S.C. § 157(b), and this Court may enter a final order consistent with Article III of the United States Constitution.  This Court has constitutional authority to enter final orders with respect to the relief requested herein.  The Debtor further confirms its consent to this Court's entry of final orders or judgments on this Complaint if it is later determined that, in the absence of the consent of the parties, this Court does not have constitutional authority to enter final orders or judgments.

### IV.     FACTUAL BACKGROUND

**A.     The Debtor**

27.     Headquartered in Waco, Texas and founded in 1941, the Debtor is the largest and oldest generation and transmission electric cooperative in Texas.  It supplies wholesale power for its sixteen Member distribution cooperatives, which in turn provide power to approximately 1.5 million Texans.  The Debtor's Members' service territory extends across 68 counties from the

Texas Panhandle to Houston, ultimately delivering electricity to over 700,000 electric meters.  The Debtor owns and operates more than 2,713 miles of transmission line and over 300 substations and wholesale metered points of delivery and is the seventh largest transmission provider in the Electric Reliability Council of Texas, Inc. ("ERCOT") system.  The Debtor owns approximately 2,600 Megawatts ("MW") of generation available to be dispatched by ERCOT,[5] which amounts to approximately 3% of the total ERCOT installed generation capacity.

28.     Prior to the unprecedented and catastrophic energy crisis in February 2021, when Winter Storm Uri blanketed the entire State of Texas with snow, ice, and sub-freezing temperatures, the Debtor was a model of financial stability.  By aggregating the distribution needs of its electric cooperative Members to obtain best-in-class generation and transmission facilities through low-cost financing, the Debtor maintained an "A+" and "A" issuer credit ratings from Fitch and S&P, respectively, prior to the events leading to the Chapter 11 filing.[6]

29.     During the eight decades prior to Winter Storm Uri, the Debtor consistently met the generation, transmission, and distribution substation needs of its Members and maintained an impeccable financial record, even as Texas's population exploded during this period.

30.     The Debtor's Chapter 11 filing was precipitated by the exorbitant prices ERCOT[7] and the Gas Suppliers charged the Debtor for the energy and natural gas required to serve its Members' during Winter Storm Uri.

---

[5] ERCOT's rules, known as "Protocols," "provide the framework for the administration of the Texas electricity market." *BP Chems., Inc. v. AEP Tex. Cent. Co.*, 198 S.W.3d 449, 452 (Tex. App.—Corpus Christi 2006, no pet.).

[6] *See* S&P Global Ratings, Brazos Electric Power Cooperative Inc., Brazos Sandy Creek Electric Cooperative Inc.; Rural Electric Coop, Jan. 26, 2021; Fitch Ratings, Fitch Affirms Brazos Electric Power Cooperative, Inc. TX IDR at 'A+' – Outlook Positive, dated June 18, 2020.

[7] On August 18, 2021, the Debtor filed Adversary Proceeding No. 21-03863 contesting ERCOT's $1.9 billion proof of claim.

31.     In the aggregate, the Gas Claims add up to approximately $180 million in charges for natural gas, almost all of which occurred during Winter Storm Uri, when the Gas Suppliers raised prices as much as 35,000% from February 1, 2021 to February 16, 2021.

**B.     Price Gouging During Winter Storm Uri**

32.     During January 2021, the gas prices charged to the Debtor by the Gas Suppliers averaged approximately $2.58/MMBtu.  During the entirety of calendar year 2020, gas prices charged to the Debtor in the ordinary course of the Debtor's business averaged $1.80/MMBtu and never exceeded $3.10/MMBtu, even during the heat of the summer and the cold of winter.  As of February 1, 2021, the gas prices charged to the Debtor averaged $2.72/MMBtu.  These prices drastically and unexpectedly increased shortly thereafter as Winter Storm Uri approached.

33.     Late in the afternoon on Monday, February 8, 2021, ERCOT issued an emergency Operating Condition Notice ("OCN")[8] report for "an extreme cold weather system approaching Thursday, February 11, 2021."  An OCN is for informational purposes only in order to inform generators of a possible future need for more resources. An OCN does not give ERCOT the authority to require more resources to be available due to the possibility of an emergency.

34.     The next day, on Tuesday, February 9, 2021, the National Weather Service issued a State of Texas Weather Briefing warning of dangerously cold winter weather, including freezing rain.[9]

35.     On Wednesday, February 10, 2021, ERCOT issued an "Advisory" for the "predicted extreme cold weather event for the ERCOT region."[10]   On this same date, the

---

[8] An "Operating Condition Notice" is the first of three levels of communication issued by ERCOT in anticipation of a possible emergency condition.  Protocol 2.1; Protocol 6.5.9.3.1.

[9] Attachment to Email from Shawn Hazard, Emergency Management Coordinator, PUCT to Kasey Feldman *et al* (Feb. 10, 2021 09:58 CST) (Response by Public Utility Commission of Texas to Texas Public Information Act Request, Bates labeled PUCT 0000352-64).

Emergency Management Coordinator of the Public Utility Commission of Texas (the "PUCT") sent an email to several market participants warning that "this Arctic Air Mass is expected to make it all the way down to the [Rio Grande] Valley!"[11]

36.     After the foregoing news from ERCOT and PUCT broke on February 10, the gas prices charged to the Debtor by the Gas Suppliers jumped approximately 41% on average, from $3.36/MMBtu on February 9 to $4.73 on February 10.

37.     On Thursday, February 11, 2021, ERCOT issued a "Watch" for an extreme cold weather event.[12]

38.     From Wednesday, February 10, 2021 to Thursday, February 11, 2021, the gas prices charged to the Debtor by the Gas Suppliers jumped approximately another 289% on average.

39.     On February 11, for gas to be delivered the next day, the Gas Claimants charged the following amounts:

| Gas Claimant | Low Price/MMBtu | High Price/MMBtu |
|---|---|---|
| NJR | $16.685 | $16.685 |
| ETC | $17.50 | $17.50 |
| Mercuria | $15.50 | $29.00 |
| Concord | $18.00 | $25.50 |
| Tenaska | $16.50 | $17.50 |

---

[10] An "Advisory" is the second of three levels of communication in anticipation of a possible emergency condition, but it is not the establishment of an emergency condition. Protocols 2.1; Protocols 6.5.9.3.2. Advisory *available at* http://www.ercot.com/services/comm/mkt_notices/notices/2021/02 (issued at 17:09:45 on Feb. 10, 2021).

[11] Email from Shawn Hazard, Emergency Management Coordinator, PUCT to Kasey Feldman *et al* (Feb. 10, 2021 09:58 CST) (PUCT 0000352-64).

[12] A "Watch" is the third of three levels of communication in anticipation of a possible emergency condition, but it is not the establishment of an emergency condition. Protocols 2.1; Protocols 6.5.9.4.

| Gas Claimant | Low Price/MMBtu | High Price/MMBtu |
|---|---|---|
| Koch | $10.50 | $18.00 |
| Total | n/a | n/a |

40.     On Friday, February 12, 2021, Texas Governor Greg Abbott issued a Disaster Declaration pursuant to Section 418.014 of the Texas Government Code, stating that "severe winter weather poses an imminent threat of widespread and severe property damage, injury, and loss of life due to prolonged freezing temperatures, heavy snow, and freezing rain statewide."[13]

41.     The gas prices charged to the Debtor by the Gas Suppliers rose an additional 880% on average from the prior day, which was a cumulative price increase of 6,628% over a 12-day period commencing February 1, 2021.

42.     On February 12, for gas to be delivered between February 13 and February 16, the Gas Claimants charged the following amounts:

| Gas Claimant | Low Price/MMBtu | High Price/MMBtu | % Increase from prior trading day |
|---|---|---|---|
| NJR | $149.66 | $149.66 | 797% |
| ETC | $175.00 | $200.00 | 1043% |
| Mercuria | $140.00 | $250.40 | 763% to 1515% |
| Concord | $150.00 | $250.00 | 880% to 1289% |
| Tenaska | $175.00 | $175.00 | 900% to 961% |
| Koch | $200.00 | $200.00 | 1011% to 1805% |
| Total | $133.61 | $133.61 | n/a |

---

[13]  Available at:   https://gov.texas.gov/news/post/governor-abbott-issues-disaster-declaration-in-response-to-severe-winter-weather-in-texas.

43.     But, the price increases were not over. On Saturday, February 13, 2021, ERCOT issued an emergency notice for extreme cold weather event, which it posted on its website.[14]

44.     On Sunday, February 14, 2021, the President of the United States declared that an emergency existed in the State of Texas and ordered that federal assistance be provided.[15]

45.     In the early hours of Monday, February 15, 2021, ERCOT declared an Energy Emergency Alert ("EEA") "Level 1," urging consumers to conserve power.  Within an hour, ERCOT elevated to an EEA "Level 2," and only thirteen minutes later, at 1:25 a.m., ERCOT elevated to an EEA "Level 3."  Level 3 is the highest level of emergency in ERCOT, under which ERCOT "[a]s a last resort, instruct[s] transmission companies to reduce demand on the electric system; typically in the form of controlled outages."[16]

46.     With the grid stressed to within minutes of a catastrophic failure, on February 15, 2021, ERCOT ordered transmission operators to implement deep cuts in load in the form of rolling blackouts to reduce the strain on the ERCOT transmission grid and avoid a complete collapse of the ERCOT system.

47.     Thereafter, on Tuesday, February 16th (the next trading day following the President's Day holiday) the gas prices charged to the Debtor by the Gas Suppliers jumped another 329% on average from the average gas prices on Friday, February 12th, with prices as high as 35,000% above the prices seen on February 1, 2021.

48.     On February 16, for gas to be delivered February 17, the Gas Claimants charged the following amounts:

---

[14] Review of February 2021 Extreme Cold Weather Event – ERCOT Presentation, dated February 25, 2021, *available at* http://www.ercot.com/content/wcm/lists/226521/Texas_Legislature_Hearings_2-25-2021.pdf.

[15] Available at:  https://www.whitehouse.gov/briefing-room/statements-releases/2021/02/14/president-joseph-r-biden-jr-approves-texas-emergency-declaration/.

[16] 2021 Energy Emergency Alert Overview, dated May 2021, *available at* http://www.ercot.com/content/wcm/lists/230330/2021_EEA_Overview_Final.pdf.

| Gas Claimant | Low Price/MMBtu | High Price/MMBtu | Increase from average[17] |
|---|---|---|---|
| NJR | $725.00 | $725.00 | 26,554% |
| ETC | n/a | n/a | n/a |
| Mercuria | $710.00 | $950.00 | 34,826% |
| Concord | n/a | n/a | n/a |
| Tenaska | $675.00 | $700.00 | 25,635% |
| Koch | n/a | n/a | n/a |
| Total | n/a | n/a | n/a |

49.     More than $60 million of the approximately $180 million sought by the Gas Claimants are for the trades entered into on February 16.

50.     Not only did the prices charged to Debtor during Winter Storm Uri far exceed the prices that Debtor had been previously charged, they were far higher than the reported index prices for one of the natural gas hubs closest to Debtor's relevant facilities, the Natural Gas-East Texas (NGPL TEXOK) hub.

51.     This unprecedented increase in gas prices by the Gas Suppliers during the course of Winter Storm Uri contributed significantly to the Debtor's drastic reversal of financial stability.

**C.      The Gas Claims**

52.     The transactions making up the Gas Claims were entered into on the Debtor's behalf by Alliance for Cooperative Energy Services Power Marketing, LLC ("ACES"), which serves as the Debtor's agent for purposes of purchasing gas, among other things.  ACES purchased gas from 11 gas suppliers in February, including NJR, Koch, Total, Mercuria, Tenaska, Concord,

---

[17] Percentage increase from average price of $2.72/MMBtu on February 1, 2021.

and ETC (collectively, the "Gas Suppliers").  Mercuria, Tenaska, Concord, and ETC have sold

their claims to certain of the Gas Claimants as detailed in the chart below listing the relevant

information for each of the Gas Claims filed before the Claims Bar Date (defined below).  The Gas

Claimants who purchased their claims are assignees of the relevant Gas Suppliers and are subject

to the same defenses as those Gas Suppliers would be.

| Claimant | Claim No. | Date Claim Filed | Amount of Claim as Filed | Priority Asserted | Original Gas Supplier if Different Party |
|---|---|---|---|---|---|
| 507 Capital, LLC | 216 | 5/13/2021 | $40,125.00 | General Unsecured | Mercuria Energy America, LLC |
| 507 Summit, LLC | 106 | 3/23/2021 | $5,382,500.00 | Administrative Priority | Concord Energy LLC |
| Cetus Capital VI, L.P. | 110 | 3/23/2021 | $49,629.64 | Administrative Priority | Concord Energy LLC |
| Cetus Capital VI, L.P. | 113 | 3/23/2021 | $5,850,370.37 | Administrative Priority | Concord Energy LLC |
| Cetus Capital VI, L.P. | 214 | 5/13/2021 | $12,471,259.22 | Priority | Mercuria Energy America, LLC |
| Chase Lincoln First Commercial Corporation | 335 | 6/11/2021 | $30,081,550.00 | Administrative Priority ($30,038,950.00) & General Unsecured (42,600.00) | Tenaska Marketing Ventures |
| Citigroup Financial Products Inc. | 385 | 6/14/2021 | $15,472,239.00 | Administrative Priority ($15,088,289.00) & General Unsecured ($383,950.00) | ETC Marketing, Ltd. |
| CrossingBridge Low Duration High Yield Fund | 115 | 3/23/2021 | $2,467,407.41 | Administrative Priority | Concord Energy LLC |
| CrossingBridge Low Duration High Yield Fund | 207 | 5/13/2021 | $2,930,000.00 | Priority | Mercuria Energy America, LLC |
| Destinations Global Fixed Income Opportunities Fund | 213 | 5/13/2021 | $9,959,000.00 | Priority | Mercuria Energy America, LLC |
| Destinations Low Duration Fixed Income Fund | 114 | 3/23/2021 | $4,493,333.33 | Administrative Priority | Concord Energy LLC |
| Destinations Low Duration Fixed Income Fund | 208 | 5/13/2021 | $6,027,000.00 | Priority | Mercuria Energy America, LLC |
| Koch Energy Services LLC | 319 | 6/10/2021 | $3,214,675.00 | Administrative Priority | n/a |

| Claimant | Claim No. | Date Claim Filed | Amount of Claim as Filed | Priority Asserted | Original Gas Supplier if Different Party |
|---|---|---|---|---|---|
| | | | | ($3,039,125.00) & General Unsecured (175,550.00) | |
| Leaffilter North Holdings, Inc. | 110 | 3/23/2021 | $471,111.11 | Administrative Priority | Concord Energy LLC |
| Leaffilter North Holdings, Inc. | 210 | 5/13/2021 | $473,000.00 | Priority | Mercuria Energy America, LLC |
| NJR Energy Services Co. | 167 | 4/8/2021 | $26,079,125.00 | Administrative Priority | n/a |
| OFM II, LP | 108 | 3/23/2021 | $433,703.70 | Administrative Priority | Concord Energy LLC |
| OFM II, LP | 110 | 3/23/2021 | $185,925.92 | Administrative Priority | Concord Energy LLC |
| OFM II, LP | 114 | 3/23/2021 | $2,246,666.67 | Administrative Priority | Concord Energy LLC |
| OFM II, LP | 115 | 3/23/2021 | $1,233,703.70 | Administrative Priority | Concord Energy LLC |
| OFM II, LP | 215 | 5/13/2021 | $8,666,468.28 | Priority | Mercuria Energy America, LLC |
| OU 2 LLC | 108 | 3/23/2021 | $867,407.41 | Administrative Priority | Concord Energy LLC |
| OU 2 LLC | 211 | 5/13/2021 | $875,000.00 | Priority | Mercuria Energy America, LLC |
| RiverPark Short Term High Yield | 113 | 3/23/2021 | $11,700,740.74 | Administrative Priority | Concord Energy LLC |
| RiverPark Short Term High Yield | 206 | 5/13/2021 | $13,958,000.00 | Priority | Mercuria Energy America, LLC |
| RiverPark Strategic Income Fund | 212 | 5/13/2021 | $5,778,000.00 | Priority | Mercuria Energy America, LLC |
| Total Gas & Power North America, Inc. | 350 | 6/14/2021 | $5,344,400.00 | Administrative Priority | n/a |
| Two Seas Global (Master) Fund LP | 106 | 3/23/2021 | $2,000,000.00 | Administrative Priority | Concord Energy LLC |

53.     The Gas Claims are the result of individual communications between ACES and the

Gas Suppliers during February of 2021.  Although each of the Gas Suppliers had a pre-existing

NAESB[18] form contract with Brazos, those agreements did not obligate Brazos to purchase any

gas.  Nor did they obligate the Gas Suppliers to sell any gas.  Those agreements set forth certain

---

[18] "NAESB" stands for North American Energy Standards Board.

terms, other than quantity and price, that would apply if Brazos and a Gas Supplier were to agree to a sale of a given quantity of gas at a given price in a discrete transaction.

54.    The average price charged by the Gas Suppliers to the Debtor for transactions entered into on February 1, 2021 was just $2.72/MMBtu.  During Winter Storm Uri, Gas Suppliers charged as much as $950/MMBtu in a transaction, with prices ranging from an average of $180.28/MMBtu on February 12th to an average of $750.23/MMBtu on February 16th.

55.    As a non-profit electric cooperative, any costs incurred by Brazos are passed through to its Members, which are also non-profit cooperatives that, in turn, pass through their costs to the consumers of Brazos' Members.  Without redress through these proceedings, these exorbitant prices would ultimately have to be paid by those consumers.  As such, any price-gouging of the Debtor affects the 1.5 million consumers that rely on the electricity provided to Debtor's Members for their homes and businesses.

**D.    The Bankruptcy Case**

56.    In the wake of the catastrophe that is Winter Storm Uri, on the Petition Date, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor has continued in possession of its property and has continued to operate and manage its business as a debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

57.    On March 15, 2021, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Committee").  *See* Dkt. No. 216. The Committee was reconstituted by the U.S. Trustee on March 24, 2021.  *See* Dkt. No. 285.

58.    Additional information about the Debtor's business and affairs, capital structure, prepetition indebtedness, and the events leading up to the Petition Date can be found in the

*Declaration of Clifton Karnei in Support of Chapter 11 Petition and First Day Motions* (the "First Day Declaration") [Dkt. No. 3].

59.     On May 5, 2021, the Court entered its *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner for Filing Proofs of Claim, Including Section 503(b)(9) Requests, (IV) Approving Notice of Bar Dates, and (V) Granting Related Relief* [Dkt. No. 515], setting the deadline for filing proofs of claim on June 15, 2021 (the "Claims Bar Date").

60.     As delineated above, each Gas Claimant has asserted their respective Gas Claims against the Debtor.

## V.     CAUSES OF ACTION

### COUNT 1: OBJECTION TO GAS CLAIMS AND ACTION SEEKING DECLARATION (A) THAT THE AGREEMENTS UNDERLYING THE GAS CLAIMS ARE UNENFORCEABLE AND (B) ESTABLISHING A FAIR PRICE FOR THE GAS

61.     The preceding paragraphs are incorporated herein by reference.

62.     Section 502 of the Bankruptcy Code provides that "[a] claim or interest, proof of which is filed under Section 501 of [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  A claim is disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).  *Any* claim objected to by a party-in-interest is subject to a Court-determination of the proper claim amount. *See* 11 U.S.C. § 502(b).

63.     Texas courts do not enforce agreements that are unconscionable, contrary to public policy, were entered into under duress, or that require the performance of an illegal act, each of which is true of the Gas Claims. *See, e.g.* TEX. BUS. & COM. CODE § 2.302.

64.     Texas has outlawed price gouging during a declared disaster.  Section 17.46 of the DTPA provides that it is unlawful to take advantage of a disaster declared by the Governor under Chapter 418 of the Government Code by: "(A) selling or leasing fuel . . . or another necessity at an exorbitant or excessive price; or (B) demanding an exorbitant or excessive price in connection with the sale or lease of fuel . . . or another necessity." TEX. BUS. & COM. CODE § 17.46(b)(27).

65.     Despite this prohibition, when Governor Abbott issued an emergency declaration regarding Winter Storm Uri on February 12th, the Gas Suppliers raised their prices far in excess of the 15% increase the Texas Legislature contemplated as "price-gouging."[19]

66.     These transactions are contrary to the spirit of the DTPA, and therefore, unconscionable and against public policy. The Gas Claimants forced the Debtor to choose between paying grossly disproportionate prices that they knew the Debtor and Texas consumers could not afford and letting Texans literally freeze to death.  Moreover, as the Gas Claimants are well aware, both the Debtor and the Members are non-profit organizations, and the only way for the Gas Claims to be satisfied is to price gouge the 1.5 million consumers who are provided power by the Debtor's Members.  Accordingly, the contracts underlying the Gas Claims are not enforceable because they are unconscionable, contrary to public policy, and were entered into under duress. Therefore, as asserted, the Gas Claims against the Debtor must be disallowed.

67.     The Debtor therefore seeks an order under Section 502(b)(1) disallowing the Gas Claims to the extent that they seek exorbitant prices that are unenforceable against the Debtor.  The Debtor also seeks a determination from the Court of a maximum reasonable price for gas delivered during Winter Storm Uri and a cap on the Gas Claims at such amount.

---

[19] *See* Texas Bill Analysis, H.B. 1152, 5/16/2019.

**COUNT 2: OBJECTION TO GAS CLAIMS UNDER 11 U.S.C. § 502 AND ACTION TO AVOID CONSTRUCTIVELY FRAUDULENT OBLIGATIONS UNDER 11 U.S.C. § 548**

68.     The preceding paragraphs are incorporated herein by reference.

69.     Under Bankruptcy Code Section 548(a)(1)(B), a debtor may avoid any obligation incurred by the debtor on or within two years prior to the Petition Date, if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for such obligation, and, as applicable, (i) the debtor was insolvent on the date that such obligation was incurred, or became insolvent as a result of such obligation; (ii) the debtor was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or (iii) the debtor intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.[20]

70.     The Gas Claims for approximately $180 million are based on exorbitant and excessive prices for which the Debtor voluntarily or involuntarily received less than reasonably equivalent value in exchange. The Debtor either became insolvent in part as a result of these obligations, was left with an unreasonably small capital with which to engage in business or a transaction, or believed that incurrence of such obligations would be beyond the Debtor's ability to pay debts as such debts matured.   Accordingly, these obligations are avoidable pursuant to Bankruptcy Code Section 548 to the extent that such obligations exceed the reasonably equivalent value of what the Debtor received and the Gas Claims must be disallowed or substantially reduced pursuant to Bankruptcy Code Section 502.

---

[20] 548(a)(i)(B) contains another provision related to insider transactions, which is not applicable here.

**COUNT 3: OBJECTION TO GAS CLAIMS UNDER 11 U.S.C. § 502 AND ACTION TO
AVOID CONSTRUCTIVELY FRAUDULENT OBLIGATIONS UNDER
11 U.S.C. § 544(B) AND TEX. BUS. & COM. CODE § 24.005**

71.     The preceding paragraphs are incorporated herein by reference.

72.     Under Bankruptcy Code Sections 544(b), the Debtor may avoid any obligation incurred by the Debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under Bankruptcy Code Section 502, or that is not allowable only under Bankruptcy Code Section 502(e).

73.     Under TEX. BUS. & COM. CODE § 24.005 (Transfers Fraudulent as to Present and Future Creditors), an obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or within a reasonable time after the obligation was incurred, if the debtor incurred the obligation (1) without receiving a reasonably equivalent value in exchange for the obligation and (2) the debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction, or the debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.  Such obligations are avoidable pursuant to TEX. BUS. & COM. CODE § 24.008(a).

74.     The Debtor received less than reasonably equivalent value in exchange for the Gas Claims.  Further, the Debtor either was engaged or was about to engage in a business or a transaction for which the remaining assets of the Debtor were unreasonably small in relation to the business or transaction, or the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

75.     Prior to and at the time of this obligation, and continuing through the Petition Date, there were creditors holding unsecured claims against the Debtor that are allowable under

Bankruptcy Code Section 502.  The purported obligations underlying the Gas Claims would be voidable by these creditors pursuant to TEX. BUS. & COM. CODE §§ 24.005 and 24.008(a).

76.     Accordingly, the Gas Claims may be avoided pursuant to TEX. BUS. & COM. CODE §§ 24.005 and 24.008(a) and Bankruptcy Code Section 544(b) and must be disallowed or substantially reduced pursuant to Bankruptcy Code Section 502.

**COUNT 4: OBJECTION TO PRIORITY OF GAS CLAIMS UNDER
11 U.S.C. § 503(b)(9): GOODS WERE NOT SOLD IN THE
ORDINARY COURSE OF THE DEBTOR'S BUSINESS**

77.     The preceding paragraphs are incorporated herein by reference.

78.     Bankruptcy Code Section 503(b)(9) provides for administrative priority for "the *value* of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor *in the ordinary course of such debtor's business*."  11 U.S.C. § 503(b)(9) (emphasis added).

79.     The Gas Claims are not entitled to priority status because the gas at issue was not purchased in the ordinary course of the Debtor's business as required by Bankruptcy Code Section 503(b)(9).  During Winter Storm Uri, the Gas Suppliers charged exorbitant and unprecedented prices knowing that the Debtor faced a Hobson's choice: Buy gas at extortionate prices or allow Texans to die. This is the antithesis of the ordinary course of business, and therefore, the entirety of any allowed portion of the Gas Claims should be reclassified as general unsecured claims.

**COUNT 5: OBJECTION TO PRIORITY OF GAS CLAIMS UNDER**
**11 U.S.C. § 503(b)(9): THE GAS CLAIMS EXCEED**
**THE VALUE OF GOODS RECEIVED**

80.     The preceding paragraphs are incorporated herein by reference.

81.     The Gas Claims are not entitled to priority status under Bankruptcy Code Section 503(b)(9) for an additional reason: The Gas Claims far exceed the "value" of the goods received by the Debtor.

82.     The amounts that the Gas Claims seek are orders of magnitude beyond the actual value of the gas supplied to Debtors. Therefore, the Gas Claims are not entitled to priority under 11 U.S.C. §§ 503(b)(9) and 507.

**VI.     RESERVATION OF RIGHTS AND RIGHT TO AMEND**

83.     This Complaint is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtor to object to any claim on any ground whatsoever.  The Debtor expressly reserves all further substantive or procedural objections to the Gas Claims and any other claim.  The Debtor further reserves its right to amend or supplement this Complaint as additional information is discovered, including the right to assert affirmative relief.

84.     Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (i) an admission as to the validity of any prepetition claim against the Debtor; (ii) a waiver of the Debtor's right to dispute any prepetition claim on any grounds; (iii) a promise or requirement to pay any prepetition claim; (iv) an implication or admission that any particular claim is of a type specified or defined in this Complaint or any order granting the relief requested by this Complaint; (v) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to Section 365 of the Bankruptcy Code; or (iv) a waiver of the Debtor's rights under the Bankruptcy Code or any other applicable law.

## VII.   PRAYER

For the foregoing reasons, the Debtor respectfully requests that this Court enter a final judgment (a) disallowing, in part, and reducing the Gas Claims in an amount to be determined by the Court, and (b) finding that the entirety of the Gas Claims are not entitled to priority under Bankruptcy Code Section 503(b)(9), and (c) declaring that the agreements underlying the Gas Claims are unenforceable against the Debtor;  and (d) for such other and further relief as may be just and proper.

*[Remainder of page intentionally left blank.]*

Respectfully submitted,

**FOLEY & LARDNER, LLP**

*/s/ Ronald L. Oran, Jr.*
Ronald L. Oran, Jr.
State Bar No. 24072268
Email: *roran@foley.com*
Drake Lawsage
State Bar No. 24102070
Email: *dlawsage@foley.com*
Jennifer N. Huckleberry
State Bar No. 24118414
Email: *jhuckleberry@foley.com*
1000 Louisiana Street, Suite 2000
Houston, TX 77002
Telephone: 713.276.5500
Facsimile: 713.276.5555

-and-

Holland N. O'Neil
State Bar No. 14864700
Email: *honeil@foley.com*
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Telephone: 214.999.4961
Facsimile: 214.999.4667

-and-

Timothy C. Mohan
State Bar No. 50559
Email: *tmohan@foley.com*
600 17th Street, Suite 2020S
Denver, CO 80202
Telephone: 720.437.2000
Facsimile: 720.437.2200

**SPECIAL COUNSEL AND CONFLICTS
COUNSEL TO THE DEBTOR**

**MCKOOL SMITH**

William D. Wood
State Bar No. 21916500
Email: *wwood@mckoolsmith.com*
Veronica Manning
State Bar No. 24098033
Email: *vmanning@mckoolsmith.com*
600 Travis Street, Suite 7000
Houston, TX  77002
Telephone: 713.485.7300
Facsimile: 713.485.7344

**SPECIAL COUNSEL AND CONFLICTS
COUNSEL TO THE DEBTOR ONLY FOR
ISSUES SPECIFIC TO CITIGROUP
FINANCIAL PRODUCTS INC.**