# Exhibit 7

Case 21-04407   Document 33-7   Filed in TXSB on 01/07/22   Page 2 of 9

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

TX B. An., H.B. 1520, 5/21/2021

[Image 1 within document in PDF format.](#)

Texas Bill Analysis, 2021 Regular Session, House Bill 1520

May 21, 2021
Texas Senate Research Center
87th Legislature, 2021 Regular Session

Senate Research Center
    C.S.H.B. 1520
    By: Paddie (Hancock)
    Natural Resources & Economic Development
    5/21/2021
    Committee Report (Substituted)

**AUTHOR'S / SPONSOR'S STATEMENT OF INTENT**

The recent winter storm in Texas resulted in a historic demand for energy. Due to factors beyond their control, gas utilities incurred extraordinary costs in procuring the necessary supply of gas to maintain service to their customers. The cost of gas is not controlled by gas utilities but instead is set by the market and passed through to the customer without markup. Considering the extraordinary costs incurred in the recent winter storm, customers could see a dramatic increase in their monthly bills without the securitization of those costs. C.S.H.B. 1520 seeks to minimize the cost that customers might experience from those extraordinary costs, as well as from future extraordinary costs from potential catastrophic events such as natural and man-made disasters or system failures by providing securitization financing to enable gas utilities to recover these costs. This financing mechanism will provide rate relief to customers by extending the time frame over which the extraordinary costs are recovered and will support the financial strength and stability of gas utility companies.

C.S.H.B. 1520 amends current law relating to certain extraordinary costs incurred by certain gas utilities relating to Winter Storm Uri and a study of measures to mitigate similar future costs and provides authority to issue bonds and impose fees and assessments.

**RULEMAKING AUTHORITY**

This bill does not expressly grant any additional rulemaking authority to a state officer, institution, or agency.

**SECTION BY SECTION ANALYSIS**

SECTION 1. Amends Section 1232.002, Government Code, as follows:
  Sec. 1232.002. PURPOSE. Provides that the purpose of Chapter 1232 (Texas Public Finance Authority) is to provide a method of financing for customer rate relief bonds authorized by the Railroad Commission of Texas (RRC) in accordance with Subchapter I, Chapter 104, Utilities Code. Makes nonsubstantive changes.

SECTION 2. Amends Section 1232.066(a), Government Code, as follows:
  (a) Provides that the authority of the board of directors' (board) of the Texas Public Finance Authority (TPFA) under Chapter 1232 is limited to the financing of customer rate relief bonds approved by RRC in accordance with Subchapter I, Chapter 104, Utilities Code. Makes nonsubstantive changes.

SECTION 3. Amends Subchapter C, Chapter 1232, Government Code, by adding Section 1232.1072, as follows:

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

Case 21-04407   Document 33-7   Filed in TXSB on 01/07/22   Page 3 of 9

Sec. 1232.1072. ISSUANCE OF OBLIGATIONS FOR FINANCING CUSTOMER RATE RELIEF PROPERTY. (a) Provides that the definitions in Section 104.362, Utilities Code, apply to terms used in this section.

(b) Authorizes TPFA to create an issuing financing entity for the purpose of issuing customer rate relief bonds approved by RRC in a financing order, as provided by Subchapter I, Chapter 104, Utilities Code.

(c) Provides that an issuing financing entity created under this section is a duly constituted public authority and instrumentality of the state and is authorized to issue customer rate relief bonds on behalf of the state for the purposes of Section 103, Internal Revenue Code of 1986 (26 U.S.C. Section 103).

(d) Requires that the issuing financing entity be governed by a governing board of three members appointed by TPFA. Authorizes a member of the governing board to be a current or former director of TPFA. Provides that a member of the governing board serves without compensation but is entitled to reimbursement for travel expenses incurred in attending board meetings.

(e) Requires that the issuing financing entity be formed in accordance with, be governed by, and have the powers, rights, and privileges provided for a nonprofit corporation organized under the Business Organizations Code, including Chapter 22 of that code, subject to the express exceptions and limitations provided by this section and Subchapter I, Chapter 104, Utilities Code. Requires a single organizer selected by the executive director of TPFA to prepare the certificate of formation of the issuing financing entity under Chapters 3 and 22, Business Organizations Code. Requires that the certificate of formation be consistent with the provisions of this section.

(f) Requires TPFA to establish the issuing financing entity to act on behalf of the state as its duly constituted authority and instrumentality to issue customer rate relief bonds approved under Subchapter I, Chapter 104, Utilities Code.

(g) Requires TPFA, on a request to TPFA from RRC, to direct an issuing financing entity to issue customer rate relief bonds in accordance with a financing order issued by RRC as provided in Subchapter I, Chapter 104, Utilities Code.

(h) Requires TPFA and RRC, before the issuance of any customer rate relief bonds, to ensure that adequate provision is made in any financing order for the recovery of all issuance costs and all other fees, costs, and expenses of TPFA, the issuing financing entity, and any advisors or counsel hired by TPFA or the entity for the purposes of this section during the life of the customer rate relief bonds.

(i) Provides that customer rate relief bonds are limited obligations of the issuing financing entity payable solely from customer rate relief property and any other money pledged by the issuing financing entity to the payment of the bonds and are not a debt of this state, RRC, TPFA, or a gas utility.

(j) Requires RRC to ensure that customer rate relief charges are imposed, collected, and enforced in an amount sufficient to pay on a timely basis all bond obligations, financing costs, and bond administrative expenses associated with any issuance of customer rate relief bonds.

(k) Provides that TPFA and RRC have all the powers necessary to perform the duties and responsibilities described by this section. Requires that this section be interpreted broadly in a manner consistent with the most cost-effective financing of customer rate relief property, including regulatory assets, extraordinary costs, and related financing costs approved by RRC in accordance with Subchapter I, Chapter 104, Utilities Code.

(l) Provides that any interest on the customer rate relief bonds is not subject to taxation by and is prohibited from being included as part of the measurement of a tax by this state or a political subdivision of this state.

(m) Requires TPFA to make periodic reports to RRC and the public regarding each financing made in accordance with Section 104.373(b), Utilities Code, and if required by the applicable financing order.

(n) Requires that the issuing financing entity issue customer rate relief bonds in accordance with and subject to other provisions of Title 9 (Public Securities) applicable to TPFA.

(o) Authorizes the issuing financing entity to exercise the powers granted to the governing body of an issuer with regard to the issuance of obligations and the execution of credit agreements under Chapter 1371 (Obligations for Certain Public Improvements). Provides that a purpose for which bonds, obligations, or other evidences of indebtedness are issued under this section and Subchapter I, Chapter 104, Utilities Code, constitutes an eligible project for purposes of Chapter 1371 of this code.

(p) Prohibits assets of an issuing financing entity from being considered part of any state fund and requires that they be held outside the state treasury. Prohibits the liabilities of the issuing financing entity from being considered to be a debt of the state or a pledge of the state's credit. Requires that an issuing financing entity be self-funded from customer rate relief property and established in accordance with Subchapter I, Chapter 104, Utilities Code. Authorizes a state agency to provide

Case 21-04407  Document 33-7  Filed in TXSB on 01/07/22  Page 4 of 9

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

money appropriated for the purpose to the issuing financing entity to provide for initial operational expenses of the issuing financing entity.

SECTION 4. Amends Section 1232.108, Government Code, as follows:

Sec. 1232.108. LEGISLATIVE AUTHORIZATION REQUIRED. Provides that, except as permitted by Section 1232.1072, among other sections, before the board of TPFA is authorized to issue and sell bonds, the legislature by the General Appropriations Act or other law is required to have authorized:

(1) the specific project for which the bonds are to be issued and sold; and

(2) the estimated cost of the project or the maximum amount of bonded indebtedness that may be incurred by the issuance and sale of bonds for the project.

SECTION 5. Amends Chapter 104, Utilities Code, by adding Subchapter I, as follows:

SUBCHAPTER I. CUSTOMER RATE RELIEF BONDS

Sec. 104.361. PURPOSE; RAILROAD COMMISSION DUTY. (a) Provides that the purpose of this subchapter is to reduce the cost that customers would otherwise experience because of extraordinary costs that gas utilities incurred to secure gas supply and provide service during Winter Storm Uri, and to restore gas utility systems after that event, by providing securitization financing for gas utilities to recover those costs. Provides that the securitization financing mechanism authorized by this subchapter will provide rate relief to customers by extending the period during which the costs described by this subsection are recovered from customers and support the financial strength and stability of gas utility companies.

(b) Requires RRC to ensure that securitization provides tangible and quantifiable benefits to customers, greater than would have been achieved absent the issuance of customer rate relief bonds.

Sec. 104.362. DEFINITIONS. Defines "ancillary agreement," "authority," "bond administrative expenses," "bond obligations," "credit agreement," "customer rate relief bonds," "customer rate relief charges," "customer rate relief property," "financing costs," "financing order," "financing party," "gas utility," "issuing financing entity," "nonbypassable," "normalized market pricing," "regulatory asset," "servicer," and "Winter Storm Uri."

Sec. 104.363. EXTRAORDINARY COSTS. Provides that, for the purposes of this subchapter, extraordinary costs are the reasonable and necessary costs related to Winter Storm Uri, including carrying costs, placed in a regulatory asset and approved by RRC in a regulatory asset determination under Section 104.365.

Sec. 104.364. JURISDICTION AND POWERS OF RAILROAD COMMISSION AND OTHER REGULATORY AUTHORITIES. (a) Authorizes RRC to authorize the issuance of customer rate relief bonds if the requirements of Section 104.366 are met.

(b) Authorizes RRC to assess to a gas utility costs associated with administering this subchapter. Requires that assessments be recovered from rate-regulated customers as part of gas cost.

(c) Provides that RRC has exclusive, original jurisdiction to issue financing orders that authorize the creation of customer rate relief property. Requires that customer rate relief property be created and vested in an issuing financing entity and provides that it does not constitute property of RRC or any gas utility.

(d) Provides that, except as provided by Subsection (c), this subchapter does not limit or impair a regulatory authority's plenary jurisdiction over the rates, charges, and services rendered by gas utilities in this state under Chapter 102 (Jurisdiction and Powers of Railroad Commission and Other Regulatory Authorities).

Sec. 104.365. REGULATORY ASSET DETERMINATION. (a) Requires RRC, on application of a gas utility to recover a regulatory asset, to determine the regulatory asset amount to be recovered by the gas utility. Authorizes a gas utility to request recovery of a regulatory asset under this subchapter only if the regulatory asset is related to Winter Storm Uri.

(b) Requires a gas utility desiring to participate in the customer rate relief bond process under a financing order by requesting recovery of a regulatory asset to file an application with RRC on or before the 60th day after the effective date of the Act enacting this subchapter.

(c) Provides that, if RRC does not make a final determination regarding the regulatory asset amount to be recovered by a gas utility before the 91st day after the gas utility files the application, RRC is considered to have approved the regulatory asset amount requested by the gas utility.

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

Case 21-04407   Document 33-7   Filed in TXSB on 01/07/22   Page 5 of 9

(d) Provides that the regulatory asset determination is not subject to reduction, impairment, or adjustment by further action of RRC, except as authorized by Section 104.370.

(e) Provides that the regulatory asset determination is not subject to rehearing by RRC and is authorized to be appealed only to a Travis County district court by a party to the proceeding. Requires that the appeal be filed not later than the 15th day after the date the order is signed by RRC.

(f) Authorizes the judgment of the district court to be reviewed only by direct appeal to the Supreme Court of Texas. Requires that the appeal be filed not later than the 15th day after the date of entry of judgment.

(g) Requires that all appeals be heard and determined by the district court and the Supreme Court of Texas as expeditiously as possible with lawful precedence over other matters. Requires that review on appeal be based solely on the record before RRC and briefs to the court and limited to whether the financing order:

(1) complies with the constitution and laws of this state and the United States; and

(2) is within the authority of RRC to issue under this subchapter.

(h) Requires RRC to establish a schedule, filing requirements, and a procedure for determining the prudence of the costs included in a gas utility's regulatory asset.

(i) Authorizes a gas utility, to the extent a gas utility subject to this subchapter receives insurance proceeds, governmental grants, or other sources of funding that compensate or otherwise reimburse or indemnify the gas utility for extraordinary costs following the issuance of customer rate relief bonds, to record the amount in a regulatory liability account and that amount is required to be reviewed in a future proceeding. Authorizes a gas utility, if an audit conducted under a valid gas purchase agreement identifies a change of greater than five percent to the total amount of the gas supply costs incurred during the event for which regulatory asset recovery was approved, to record the amount in a regulatory asset or regulatory liability account and that amount is required to be reviewed for recovery in a future proceeding.

Sec. 104.366. FINANCING ORDERS AND ISSUANCE OF CUSTOMER RATE RELIEF BONDS. (a) Authorizes RRC, if RRC determines that customer rate relief bond financing for extraordinary costs is the most cost-effective method of funding regulatory asset reimbursements to be made to gas utilities, to, after the final resolution of all applications filed under Section 104.365, request TPFA to direct an issuing financing entity to issue customer rate relief bonds. Requires RRC, before making the request, to issue a financing order that complies with this section.

(b) Requires RRC, to make the determination described by Subsection (a), to find that the proposed structuring, expected pricing, and proposed financing costs of the customer rate relief bonds are reasonably expected to provide benefits to customers by:

(1) considering customer affordability; and

(2) comparing the estimated monthly costs to customers resulting from the issuance of customer rate relief bonds, and the estimated monthly costs to customers that would result from the application of conventional recovery methods.

(c) Requires that the financing order:

(1) include a finding that the use of the securitization financing mechanism is in the public interest and consistent with the purposes of this subchapter;

(2) detail the total amount of the regulatory asset determinations to be included in the customer rate relief bond issuance;

(3) authorize the recovery of any tax obligation of the gas utilities arising or resulting from receipt of customer rate relief bond proceeds, or collection or remittance of customer rate relief charges through the gas utilities' gas cost recovery mechanism or other means that RRC determines reasonable;

(4) authorize the issuance of customer rate relief bonds through an issuing financing entity;

(5) include a statement of:

(A) the aggregated regulatory asset determination to be included in the principal amount of the customer rate relief bonds, not to exceed $10 billion for any separate bond issue;

(B) the maximum scheduled final maturity of the customer rate relief bonds, not to exceed 30 years, except that the legal final maturity may be longer based on rating agency and market considerations; and

(C) the maximum interest rate that the customer rate relief bonds may bear, not to exceed the maximum net effective interest rate allowed by law;

(6) provide for the imposition, collection, and mandatory periodic formulaic adjustment of customer rate relief charges in accordance with Section 104.370 by all gas utilities and successors of gas utilities for which a regulatory asset determination

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

Case 21-04407   Document 33-7   Filed in TXSB on 01/07/22   Page 6 of 9

has been made under Section 104.365 to ensure that the customer rate relief bonds and all related financing costs will be paid in full and on a timely basis by customer rate relief charges;

  (7) authorize the creation of customer rate relief property in favor of the issuing financing entity and pledge of customer rate relief property to the payment of the customer rate relief bonds;

  (8) direct the issuing financing entity to disperse the proceeds of customer rate relief bonds, net of bond issuance costs, reserves, and any capitalized interest, to gas utilities for which a regulatory asset determination has been made under Section 104.365 and include the amounts to be distributed to each participating gas utility;

  (9) provide that customer rate relief charges be collected and allocated among customers of each gas utility for which a regulatory determination has been made under Section 104.365 through uniform monthly volumetric charges to be paid by customers as a component of the gas utility's gas cost or in another manner that RRC determines reasonable; and

  (10) reflect the commitment made by a gas utility receiving proceeds that the proceeds are in lieu of recovery of those costs through the regular ratemaking process or other mechanism to the extent the costs are reimbursed to the gas utility by customer rate relief bond financing proceeds.

(d) Authorizes the financing order to provide for a centralized servicer to coordinate with participating gas utilities who bill and collect customer rate relief charges and to provide certain collection and forecast data required for calculating true-up adjustments. Prohibits the financing order from providing for RRC, TPFA, the issuing financing entity, or a participating utility to act as servicer.

(e) Requires that the principal amount determined by RRC be increased to include an amount sufficient to:

  (1) pay the financing costs associated with the issuance, including all bond administrative expenses to be paid from the proceeds of the bonds;

  (2) reimburse TPFA and RRC for any costs incurred for the issuance of the customer rate relief bonds and related bond administrative expenses;

  (3) provide for any applicable bond reserve fund; and

  (4) capitalize interest for the period determined necessary by RRC.

(f) Requires TPFA, consistent with this subchapter and the terms of the financing order, to:

  (1) direct an issuing financing entity to issue customer rate relief bonds at RRC's request, in accordance with the requirements of Chapter 1232, Government Code, and other provisions of Title 9, Government Code, that apply to bond issuance by a state agency;

  (2) determine the methods of sale, types of bonds, bond forms, interest rates, principal amortization, amount of reserves or capitalized interest, and other terms of the customer rate relief bonds that in TPFA's judgment best achieve the economic goals of the financing order and effect the financing at the lowest practicable cost; and

  (3) reimburse RRC, TPFA, or any issuing financing entity for bond administrative expenses and other costs authorized under this subchapter.

(g) Authorizes an issuing financing entity, to the extent authorized in the applicable financing order, to enter into credit agreements or ancillary agreements in connection with the issuance of customer rate relief bonds.

(h) Provides that the financing order becomes effective in accordance with its terms. Provides that the financing order, together with the customer rate relief property and the customer rate relief charges authorized by the financing order, is irrevocable and not subject to reduction, impairment, or adjustment by further action of RRC, except as provided under Subsection (j) and authorized by Section 104.370.

(i) Requires RRC to issue a financing order under this section not later than the 90th day following the date of the conclusion of all proceedings filed under Section 104.365.

(j) Provides that a financing order is not subject to rehearing by RRC. Authorizes a financing order to be appealed only to a Travis County district court by a party to the proceeding. Requires that the appeal be filed not later than the 15th day after the date the financing order is signed by RRC.

(k) Authorizes the judgment of the district court to be reviewed only by direct appeal to the Supreme Court of Texas. Requires that the appeal be filed not later than the 15th day after the date of entry of judgment.

(l) Requires that all appeals be heard and determined by the district court and the Supreme Court of Texas as expeditiously as possible with lawful precedence over other matters. Requires that review on appeal be based solely on the record before

Case 21-04407   Document 33-7   Filed in TXSB on 01/07/22   Page 7 of 9

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

RRC and briefs to the court and limits review to whether the financing order complies with the constitution and laws of this state and the United States, and is within the authority of RRC to issue under this subchapter.

(m) Requires RRC to transmit a financing order to TPFA after all appeals under this section have been exhausted.

(n) Requires TPFA to direct an issuing financing entity to issue customer rate relief bonds as soon as practicable and not later than the 180th day after receipt of a financing order issued under this section, except that TPFA is authorized to cause the issuance after the 180th day if necessary based on bond market conditions, the receipt of necessary approvals, and the timely receipt of necessary financial disclosure information from each participating gas utility.

(o) Requires the issuing financing entity to deliver customer rate relief bond proceeds net of upfront financing costs in accordance with the applicable financing order.

(p) Requires RRC, for the benefit of TPFA, the issuing financing entity, holders of customer rate relief bonds, and all other financing parties, to guarantee in a financing order that RRC will take all actions in RRC's powers to enforce the provisions of the financing order to ensure that customer rate relief charge revenues are sufficient to pay on a timely basis scheduled principal and interest on the customer rate relief bonds and all related financing costs and bond administrative expenses.

(q) Requires RRC to make periodic reports to the public regarding each financing.

Sec. 104.367. PROPERTY RIGHTS. (a) Provides that customer rate relief bonds are the limited obligation solely of the issuing financing entity and are not a debt of a gas utility or a debt or a pledge of the faith and credit of this state or any political subdivision of this state.

(b) Provides that customer rate relief bonds are nonrecourse to the credit or any assets of this state or TPFA. Provides that a trust fund created in connection with the issuance of customer rate relief bonds is not subject to Subtitle B (Texas Trust Code: Creation, Operation, and Termination of Trusts), Title 9 (Trusts), Property Code.

(c) Provides that the rights and interests of an issuing financing entity or the successor under a financing order, including the right to receive customer rate relief charges authorized in the financing order, are only contract rights until pledged in connection with the issuance of the customer rate relief bonds, at which time the rights and interests become customer rate relief property.

(d) Provides that customer rate relief property created under a financing order is vested ab initio in the issuing financing entity. Provides that customer rate relief property constitutes a present property right for purposes of contracts concerning the sale or pledge of property, notwithstanding that the imposition and collection of customer rate relief charges depends on further acts of the gas utility or others that have not yet occurred. Provides that the financing order remains in effect, and the customer rate relief property continues to exist, for the same period as the pledge of the state described by Section 104.374.

(e) Provides that all revenue and collections resulting from customer rate relief charges constitute proceeds only of a property right arising from the financing order.

(f) Provides that an amount owed by an issuing financing entity under an ancillary agreement or a credit agreement is payable from and secured by a pledge and interest in the customer rate relief property to the extent provided in the documents evidencing the ancillary agreement or credit agreement.

Sec. 104.368. PROPERTY INTEREST NOT SUBJECT TO SETOFF, COUNTERCLAIM, SURCHARGE, OR DEFENSE. Provides that the interest of an issuing financing entity or pledgee in customer rate relief property, including the revenue and collections arising from customer rate relief charges, is not subject to setoff, counterclaim, surcharge, or defense by the gas utility or any other person or in connection with the bankruptcy of the gas utility, TPFA, or any other entity. Provides that a financing order remains in effect and unabated notwithstanding the bankruptcy of the gas utility, TPFA, an issuing financing entity, or any successor or assignee of the gas utility, authority, or issuing financing entity.

Sec. 104.369. CUSTOMER RATE RELIEF CHARGES NONBYPASSABLE. Requires that a financing order include terms ensuring that the imposition and collection of the customer rate relief charges authorized in the order are nonbypassable.

Sec. 104.370. TRUE-UP MECHANISM. (a) Requires that a financing order include a formulaic true-up charge adjustment mechanism that requires that the customer rate relief charges be reviewed and adjusted at least annually by the servicer or replacement servicer, including a subservicer or replacement subservicer, at time periods and frequencies provided in the financing order, to:

(1) correct any overcollections or undercollections of the preceding 12 months; and

(2) ensure the expected recovery of amounts sufficient to provide for the timely payment of customer rate relief bond principal and interest payments and other financing costs.

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

Case 21-04407   Document 33-7   Filed in TXSB on 01/07/22   Page 8 of 9

(b) Requires that true-up charge adjustments become effective not later than the 30th day after the date RRC receives a true-up charge adjustment letter from the servicer or replacement servicer notifying RRC of the pending adjustment.

(c) Requires that any administrative review of true-up charge adjustments be limited to notifying the servicer of mathematical or clerical errors in the calculation. Authorizes the servicer to correct the error and refile a true-up charge adjustment letter, with the adjustment becoming effective as soon as practicable but not later than the 30th day after the date RRC receives the refiled letter.

Sec. 104.371. SECURITY INTERESTS; ASSIGNMENT; COMMINGLING; DEFAULT. (a) Provides that customer rate relief property does not constitute an account or general intangible under Section 9.106 (Control of Investment Property), Business & Commerce Code. Provides that the creation, granting, perfection, and enforcement of liens and security interests in customer rate relief property that secures customer rate relief bonds are governed by Chapter 1208 (Security for Public Securities), Government Code.

(b) Provides that the priority of a lien and security interest perfected under this section is not impaired by any later adjustment of customer rate relief charges under a mechanism adopted under Section 104.370 or by the commingling of funds arising from customer rate relief charges with other funds. Provides that any other security interest that may apply to those funds is terminated when the funds are transferred to a segregated account for the issuing financing entity or a financing party. Requires that any proceeds of that property, if customer rate relief property has been transferred to a trustee or another pledgee of the issuing financing entity, be held in trust for the financing party.

(c) Requires a district court of Travis County, if a default or termination occurs under the customer rate relief bonds, on application by or on behalf of the financing parties, to order the sequestration and payment to the financing parties of revenue arising from the customer rate relief charges.

Sec. 104.372. BOND PROCEEDS IN TRUST. (a) Authorizes the issuing financing entity to deposit proceeds of customer rate relief bonds issued by the issuing financing entity under this subchapter with a trustee selected by the issuing financing entity or the proceeds is authorized to be held by the Comptroller of Public Accounts of the State of Texas (comptroller) in a dedicated trust fund outside the state treasury in the custody of the comptroller.

(b) Requires that bond proceeds, net of the financing costs and reserves described by Subdivisions (2) and (3), including investment income, be held in trust for the exclusive benefit of RRC's policy of reimbursing gas utility costs and applied in accordance with the financing order. Requires that the issuing financing entity deliver the net proceeds, as provided in the applicable financing order, to:

  (1) reimburse each gas utility the regulatory asset amount determined to be reasonable for that gas utility in the financing order;
  (2) pay the financing costs of issuing the bonds; and
  (3) provide bond reserves or fund any capitalized interest, as applicable.

(c) Requires that any customer rate relief charges or other amounts held as security for the bonds, on full payment of the customer rate relief bonds and any related financing costs, be used to provide credits to gas utility customers as provided in the financing order.

Sec. 104.373. REPAYMENT OF CUSTOMER RATE RELIEF BONDS. (a) Requires that uniform monthly volumetric customer rate relief charges, as long as any customer rate relief bonds or related financing costs remain outstanding, be paid by all current and future customers that receive service from a gas utility for which a regulatory asset determination has been made under Section 104.365. Requires a gas utility and its successors, assignees, or replacements to continue to bill and collect customer rate relief charges from the gas utility's current and future customers until all customer rate relief bonds and financing costs are paid in full.

(b) Requires TPFA to report to RRC the amount of the outstanding customer rate relief bonds issued by the issuing financing entity under this subchapter and the estimated amount of annual bond administrative expenses.

(c) Requires that all revenue collected from the customer rate relief charges be remitted promptly by the applicable servicers to the issuing financing entity or the bond trustee for the customer rate relief bonds to pay bond obligations and ongoing financing costs, including bond administrative expenses, to ensure timely payment of bond obligations and financing costs.

(d) Authorizes customer rate relief property, including customer rate relief charges, to be applied only as provided by this subchapter.

(e) Provides that bond obligations are payable only from sources provided for payment by this subchapter.

Case 21-04407   Document 33-7   Filed in TXSB on 01/07/22   Page 9 of 9

Texas Bill Analysis, H.B. 1520, 5/21/2021, Texas Bill Analysis, H.B. 1520, 5/21/2021...

Sec. 104.374. PLEDGE OF STATE. (a) Provides that customer rate relief bonds issued under this subchapter and any related ancillary agreements or credit agreements are not a debt or pledge of the faith and credit of this state or a state agency or political subdivision of this state. Provides that a customer rate relief bond, ancillary agreement, or credit agreement is payable solely from customer rate relief charges as provided by this subchapter.

(b) Provides that, notwithstanding Subsection (a), this state, RRC and TPFA, pledges for the benefit and protection of the financing parties and the gas utility that this state will not take or permit any action that would impair the value of customer rate relief property, or, except as permitted by Section 104.370, reduce, alter, or impair the customer rate relief charges to be imposed, collected, and remitted to financing parties until the principal, interest and premium, and contracts to be performed in connection with the related customer rate relief bonds and financing costs have been paid and performed in full. Requires that each issuing financing entity include this pledge in any documentation relating to customer rate relief bonds.

(c) Prohibits the issuing financing entity, before the date that is two years and one day after the date that an issuing financing entity no longer has any payment obligation with respect to customer rate relief bonds, from winding up or dissolving the financing entity's operations, from filing a voluntary petition under federal bankruptcy law, and provides that neither the board of the issuing financing entity nor any public official nor any organization, entity, or other person may authorize the issuing financing entity to be or to become a debtor under federal bankruptcy law during that period. Provides that the state covenants that it will not limit or alter the denial of authority under this subsection, and that the provisions of this subsection are hereby made a part of the contractual obligation that is subject to the state pledge made in this section.

Sec. 104.375. TAX EXEMPTION. (a) Provides that customer rate relief bonds issued under this subchapter, the proceeds of those bonds, the customer rate relief charges, and any transactions relating to customer rate relief bonds are exempt from taxation by this state or a political subdivision of this state.

(b) Provides that a gas utility's receipt or collection of customer rate relief charges is exempt from state and local sales and use, franchise, and gross receipts taxes.

(c) Provides that a tax obligation of the gas utility arising from receipt of customer rate relief bond proceeds or from the collection or remittance of customer rate relief charges is an expense that is authorized to be recovered by the gas utility.

Sec. 104.376. ISSUING FINANCING ENTITY OR FINANCING PARTY NOT PUBLIC UTILITY. Prohibits an issuing financing entity or financing party from being considered to be a public utility or person providing natural gas service solely by virtue of the transactions described by this subchapter.

Sec. 104.377. NO PERSONAL LIABILITY. Provides that a commissioner of RRC, an RRC employee, a member of the board of directors of TPFA, an employee of TPFA, or a director, officer, or employee of any issuing financing entity is not personally liable for a result of an exercise of a duty or responsibility established under this subchapter.

Sec. 104.378. CATASTROPHIC WEATHER EVENT STUDY. (a) Requires RRC to conduct a study on measures to mitigate catastrophic weather events, including measures to:

(1) establish natural gas storage capacity to ensure a reliable gas supply, including location, ownership, and other pertinent factors regarding gas storage capacity;

(2) assess the advantages and disadvantages of requiring local distribution companies to use hedging tactics to avoid volatile customer rates; and

(3) assess the advantages and disadvantages of prohibiting spot market purchases during a catastrophic weather event that contribute to volatile customer rates.

(b) Requires RRC, not later than December 1, 2022 to report RRC's findings to the governor, the lieutenant governor, and the speaker of the Texas House of Representatives.

(c) Provides that this section expires August 31, 2023.

Sec. 104.379. SEVERABILITY. Severability clause.

SECTION 6. Effective date: upon passage or September 1, 2021.

TX B. An., H.B. 1520, 5/21/2021

**End of Document**  © 2021 Thomson Reuters. No claim to original U.S. Government Works.