IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.<br><br>      Debtor | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>      Plaintiff,<br><br>v.<br><br>507 CAPITAL LLC; 507 SUMMIT LLC; CETUS CAPITAL VI, L.P.; CHASE LINCOLN FIRST COMMERCIAL CORPORATION; CITIGROUP FINANCIAL PRODUCTS INC.; CROSSINGBRIDGE LOW DURATION HIGH YIELD FUND; DESTINATIONS GLOBAL FIXED INCOME OPPORTUNITIES FUND; DESTINATIONS LOW DURATION FIXED INCOME FUND; KOCH ENERGY SERVICES LLC; LEAFFILTER NORTH HOLDINGS, INC.; NJR ENERGY SERVICES CO.; OFM II, LP; OU 2 LLC; RIVERPARK SHORT TERM HIGH YIELD; RIVERPARK STRATEGIC INCOME FUND; TOTAL GAS & POWER NORTH AMERICA, INC.; AND TWO SEAS GLOBAL (MASTER) FUND LP,<br><br>      Defendants. | Adv. Proc. No. 21-04407 (DRJ) |

**TENASKA MARKETING VENTURES' JOINDER TO MOTIONS TO DISMISS**

Tenaska Marketing Ventures ("TMV") is an intervenor on behalf of defendant Chase Lincoln First Commercial Corporation.[1] In that capacity, TMV has been in discussions with the various Gas Claimants, and TMV joins in and fully supports the Motions to Dismiss the Complaint (as defined below), including as related to TMV. TMV hereby files this joinder (this "Joinder") to the Motions to Dismiss and in further opposition to the Complaint respectfully responds and states as follows:

## PRELIMINARY STATEMENT

1. In late January and early February 2021, as extreme cold weather moved into the upper Midwest from Canada, natural gas pipelines in that region started to issue watches, segment restrictions, storage and withdrawal limitations, and other measures that the transporters implemented to protect their pipelines from the oncoming extreme weather. This was a clear warning for gas consumers to the south that there would be supply shortages and market disruptions. When the extreme cold temperatures moved towards Kansas, Oklahoma, and Texas, pipeline operators in these regions started to take similar actions to protect their systems. This exacerbated the already limited supply of natural gas available in these areas and drastically limited the amount of gas that could be moved to areas suffering the coldest temperatures.

2. Brazos made the decision not to buy ahead or to lock in pricing at the market rates offered in early February. By making this election, Brazos continued to expose itself to the daily spot market to purchase its gas. This was a decision that obligated it to purchase gas at spot market prices, subject to volatile price changes due to supply limitations, transportation issues caused by the storm and other market-driven factors.

---

[1] TMV intervenes pursuant to the *Stipulation and Agreed Order Authorizing Intervention* between TMV, Chase Lincoln First Commercial Corporation, and Brazos, entered by the Court on November 22, 2021 at Dkt. 1338.

3. Brazos now seeks to deflect criticism for its decisions. Rather than face the consequences of its business decisions, Brazos seeks to blame TMV and others who sold Brazos natural gas *upon request*, on market terms, and at market prices. TMV provided natural gas to Brazos during Winter Storm Uri as it had for more than a decade without incident, including during other extreme weather events in the preceding decade. TMV did not suddenly impose any "Hobson's choice" on Brazos, nor did it fulfill its responsibilities to Brazos any differently than it has in all preceding transactions.

4. Brazos now insists that honoring its contracts with the Gas Claimants, including TMV, will result in increased costs to individual ratepayers. While TMV certainly shares the Court's oft-stated concerns about the ultimate impact on ratepayers, the potential impact has no legal bearing on the instant dispute between TMV and Brazos. The determination of how the claims against Brazos will be resolved will be determined through a plan that has yet to be filed. TMV presumes that when Brazos files a plan, Brazos will fully and completely consider this Court's comments on who ultimately bears the burden of either satisfying or compensating the claims in this case that Brazos incurred during Winter Storm Uri.

5. Brazos has failed to show that TMV acted unconscionably in any way, that TMV failed to provide reasonably equivalent value for the purchase price of the natural gas sold, or that TMV otherwise transacted with Brazos outside the ordinary course of business. As such, Brazos has failed to allege facts supporting each count of the Complaint and, accordingly, the Complaint should be dismissed in its entirety.

**BACKGROUND**

I. **The Parties**

6. Brazos is an electricity generation and transmission cooperative owned by its members (collectively, the "Co-Op Members"). TMV is an Omaha, Nebraska-based marketer of natural gas. TMV purchases natural gas from suppliers and delivers gas to customers, including Brazos. TMV and Brazos are parties to a NAESB Base Contract for the Sale and Purchase of Natural Gas, dated September 22, 2010, which was amended on June 30, 2015 (as amended, the "Contract"), pursuant to which TMV agreed to sell and deliver gas to Brazos for use as fuel to operate its power plants. The price of natural gas sold under the contract is memorialized in separate transaction confirmations, which can be based on either (a) a formula tied to the market price of natural gas at the time the buyer places an order for delivery or (b) a fixed price. During the worst of Winter Storm Uri, Brazos requested, and TMV continued to sell, natural gas to Brazos to facilitate the operation of Brazos' plants and meet demand. Specifically, from the period of February 9, 2021 through February 17, 2021, Brazos requested and TMV delivered natural gas at a total purchase price of $30,038,950. As of the date of this Motion, TMV's claim for natural gas sold to Brazos and delivered by TMV to Brazos remains unpaid.

II. **Bankruptcy Petition and Adversary Proceedings**

7. Brazos incurred charges of approximately $2.5 billion during Winter Storm Uri, including approximately $2.2 billion from ERCOT alone. *See* Dkt. 435 ("MOR"), n.2; Adv. No. 21-03863, Dkt. 1, at ¶ 15. The Gas Claims Brazos incurred were approximately $180 million. However, rather than invoicing the Co-Op Members for the charges incurred during Winter Storm Uri, Brazos' Board granted its Co-Op Members a "Temporary Affordability Adjustment" (the "TAA") in the approximate amount of $2.5 billion, described as a "suspension" of its right to

collect the $2.5 billion from the Co-Op Members. *See* MOR, n.2. Then, rather than assessing its Co-Op Members beyond the TAA, Brazos filed for chapter 11 protection on March 1, 2021 (the "<u>Petition Date</u>") in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "<u>Court</u>" and such chapter 11 case, the "<u>Case</u>"). Dkt. 3, at ¶ 9. On August 18, 2021, Brazos commenced Adversary Proceeding No. 21-03863, objecting to ERCOT's $1.9 billion claim.[2] On multiple occasions, Brazos has referenced the ERCOT claim as the key hurdle to exiting bankruptcy and has sought to extend exclusivity long past the proposed trial date to determine the amount and priority of ERCOT's claim. *See* Dkt. 1258 (seeking to extend exclusivity through and including May 25, 2022). There is nothing to suggest that the ultimate resolution of approximately $180 million of Gas Claims has any material bearing whatsoever on the ability of Brazos to exit bankruptcy.

8. After largely ignoring the Gas Claims for over seven months, on October 14, 2021, Brazos filed the *Emergency Motion for an Order (A) Authorizing Omnibus Claims Objection for Natural Gas Claims, and (B) Granting Related Relief* [Dkt. 1220] seeking an emergency order allowing it to file a consolidated adversary proceeding to object to the Gas Claims. Despite Brazos' assurances that emergency relief was warranted, and that expedited action was necessary to allow Brazos to continue on its path toward reorganization, Brazos did not file the instant adversary proceeding until November 22, 2021, almost a full month after the Court granted omnibus authorization on October 28, 2021.[3]

---

[2] ERCOT's $1.9 billion claim takes into account a reduction from its $2.2 billion in charges of approximately $350 million of collateral posted by Brazos prepetition. *See* Adv. No. 21-03863, Dkt. 1, n.4.

[3] Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Complaint.

9. On January 7, 2022, certain Gas Claimants filed motions to dismiss (collectively, the "Motions to Dismiss").

## JOINDER

10. TMV joins in all arguments raised by the Gas Claimants in the Motions to Dismiss. As detailed in the Motions to Dismiss and as stated above, Brazos has failed to state any plausible claim for relief. Instead, what is clear at this point is that TMV delivered natural gas upon Brazos' request at prices well-within (and in many cases below) the then-current market price.

11. Specifically, with respect to Count 1 of the Complaint, Brazos fails to allege facts that show the Deceptive Trade Practices-Consumer Protection Act (the "DTPA") is applicable to the current scenario. Based on the clear wording of the statute, it is not. The DTPA unambiguously exempts commercial transactions between large, sophisticated parties, such as Brazos and TMV.[4] Brazos cannot rely on a wholly inapplicable statute to create a cause of action, which is what Count 1 seeks to do. Further, Brazos has failed to allege facts showing procedural or substantive unconscionability under any applicable doctrine. Instead, Brazos describes a series of market transactions that resulted naturally from the market impacts stemming from Winter Storm Uri.

12. With respect to Counts 2 and 3 of the Complaint, Brazos has failed to allege sufficiently that it has received less than reasonably equivalent value under the Texas Uniform

---

[4] As a preliminary matter, Brazos is not a consumer under TEX. BUS. & COM. CODE § 17.45(4), and the amount of each claim being challenged exceeds the $500,000 maximum threshold under TEX. BUS. & COM. CODE § 17.49(g). Consumer status is a necessary element of a DTPA claim. TEX. BUS. & COM. CODE § 17.50(a) ("A consumer may maintain an action where . . ."). However, TEX. BUS. & COM. CODE § 17.45(4) excludes from the definition of "consumer" "a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." TEX. BUS. & COM. CODE § 17.45(10) defines "business consumer" as "an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services for commercial or business use." Further, TEX. BUS. & COM. CODE § 17.49(g) provides that "[n]othing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence." Accordingly, Brazos is not a consumer as contemplated in the DTPA and the instant transactions far exceed the applicable threshold.

Fraudulent Transfer Act or Section 548 of the Bankruptcy Code. To the contrary, the Complaint alleges no facts that evidence anything other than a series of arm's-length transactions at market prices.

13. With respect to Count 4 of the Complaint, Brazos has failed to allege sufficiently facts that show the subject transactions were outside the ordinary course of Brazos' business. As an initial matter, Brazos has failed to offer any insight into what it considers to be "ordinary course of business," but even under prevailing tests, the subject transactions are standard within Brazos' business and industry.

14. Lastly, with respect to Count 5 of the Complaint, Brazos has failed to allege any facts showing that the Gas Claims exceed the value of the goods Brazos received. Brazos neither offers any definition of value (though it appears to suggest that the correct definition must be reasonably equivalent value), nor any calculation of value received.

## RESERVATION OF RIGHTS

TMV reserves the right to amend, modify, or supplement this Joinder. TMV further reserves the right to respond, as appropriate, to any filings related to the Motions to Dismiss that are filed in the future and to make arguments with regard to this Joinder and the Motions to Dismiss, and any other related filings, at the hearing on the Motions to Dismiss.

## PRAYER

WHEREFORE, TMV respectfully requests the Court dismiss the Complaint in its entirety, with prejudice.

Date: January 7, 2022

Respectfully submitted,

**BRACEWELL LLP**

By: */s/ Robert G. Burns*
Robert G. Burns (*admitted pro hac vice*)
1251 Avenue of the Americas, 49th Floor
New York, New York 10020
Telephone: (212) 508-6100
Facsimile: (800) 404-3970
Email: robert.burns@bracewell.com

Bradley J. Benoit
711 Louisiana Street, Suite 2300
Houston, Texas 77002
Telephone: (713) 223-2300
Facsimile: (800) 404-3970
Email: brad.benoit@bracewell.com

Mark E. Dendinger (*admitted pro hac vice*)
CityPlace I, 34th Floor
185 Asylum Street
Hartford, Connecticut 06103
Telephone: (860) 947-9000
Facsimile: (800) 404-3970
Email: mark.dendinger@bracewell.com

*Counsel for Tenaska Marketing Ventures*

-9-

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served upon the counsel for parties of record in this Adversary Proceeding, electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service on the 7th day of January, 2022.

                                               */s/ Robert G. Burns*
                                               Robert G. Burns

DM-#8176148