IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>        Debtor.[1] | Chapter 11<br><br>Case No. 21-30725 (DRJ) |
| BRAZOS ELECTRIC POWER COOPERATIVE, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>507 CAPITAL, LLC, *et al.*,<br><br>        Defendants. | Adv. Proc. No. 21-04407 (DRJ)<br>Related to Dkt. Nos. 77, 103, 107 |

**ETC MARKETING, LTD.'S REPLY TO DEBTOR'S OPPOSITION TO ETC MARKETING LTD.'S MOTION FOR JUDGMENT ON THE PLEADINGS AS TO COUNTS 2 AND 3 OF THE FIRST AMENDED COMPLAINT**

Defendant ETC Marketing, Ltd. ("ETC") files this *Reply* to the *Opposition to ETC Marketing Ltd.'s Motion for Judgment on the Pleadings* [Dkt. No. 107] filed by Brazos Electric Power Cooperative, Inc. ("Brazos").[2]

---

[1] Debtor in this Chapter 11 case, along with the last four digits of its federal tax identification number is Brazos Electric Power Cooperative, Inc. (4729). Additional information regarding this case may be obtained on the website of Debtor's claims and noticing agent at http://cases.stretto.com/Brazos. Debtor's address is 7616 Bagby Avenue, Waco, TX 76712.

[2] Capitalized terms used, but not defined, in this Reply have the meaning assigned in *ETC Marketing, Ltd.'s Motion for Judgment on the Pleadings* [Dkt. No. 103] (the "Rule 12(c) Motion").

1

## II.    FACTUAL AND PROCEDURAL HISTORY

1. The Amended Complaint [Dkt. No. 77] alleges that the Obligations Brazos incurred to ETC arising from the Contested Trades should be avoided as constructively fraudulent under 11 U.S.C. § 548(a)(1)(B) and Tex. Bus. Com. Code § 24.005(a)(2). Am. Compl. Counts 2, 3.

2. On August 17, 2022, this Court entered an Order [Dkt. No. 98] resolving ETC's motion to dismiss the Amended Complaint, ruling partially as follows:

> The Motions to Dismiss are GRANTED with respect to Counts Two (2) and Three (3) of the Amended Complaint, which are hereby dismissed with prejudice for failure to state a claim upon which relief may be granted as to any obligations that were incurred before February 15, 2021… Debtor's request for leave to further amend the Amended Complaint is DENIED.

3. ETC filed its answer to the Amended Complaint [Dkt. No. 101] (the "Answer") and its Rule 12(c) Motion on September 16, 2022. Brazos filed its Opposition on October 11, 2022. The transactions that are subject to the Rule 12(c) Motion (the "Remaining Contested Trades") have a trade date of February 12, 2021 and were allegedly delivered on or after February 15, 2021. There is no dispute that Counts 2 and 3 as they relate to the other ETC Contested Trades in Exhibit B to the Amended Complaint were dismissed with prejudice pursuant to the Court's Order. *See* Opposition ¶ 1.

## III.    ARGUMENT

4. Counts 2 and 3 of the Amended Complaint specifically allege (and ETC's Answer admits) that Brazos incurred the Obligations owing to ETC **on the date each trade was made:**

Count 2--

- "Each Gas Claim was the result of **obligations incurred by the Debtor (i.e., the date of the trade)** within two years before the Petition Date." Am. Compl. ¶ 98 (emph. added); *see* Answer ¶ 98.

- "The **obligations to each Gas Claimant were incurred on the date the trade was made** while the Debtor was insolvent, or the Debtor became insolvent as a result of the **obligations incurred (on the date the trade was made)** to each Gas

2

    Claimant. At the time of, or as a result of the **obligations incurred on the date the trade was made** to each Gas Claimant, the Debtor was engaged in, or was about to be engaged in, a business or transaction for which any property remaining with the Debtor was unreasonably small in relation to its business. In addition, at the time the obligations to each Gas Claimant were incurred, the Debtor intended to incur, or believed that it would incur, debts beyond the Debtor's ability to pay as such debts matured." *Id.* ¶ 101 (emph. added); *see* Answer ¶ 101.

Count 3--

- "Each Gas Claim was the result of **obligations incurred on the date the trade was made** by the Debtor prior to the Petition Date." Am. Compl. ¶ 109 (emph. added); *see* Answer ¶ 109.

5. These admissions are wholly consistent with the Base Contract for Sale and Purchase of Natural Gas entered into by Brazos and ETC (the "ETC NAESB"),[3] which states that: "The parties shall be **legally bound from the time they so agree to transaction terms** and may each rely thereon." ETC NAESB § 1.2 (Oral Transaction Procedure) (emp. added).

6. Brazos's attempts to avoid its clear admissions and the terms of the binding ETC NAESB are unavailing.

7. First, Brazos complains that ETC's argument that the Obligations were incurred on the date the trade was made is contrary to case law. Opp. ¶ 3. Brazos then cites to several cases analyzing 11 U.S.C. § 547, none of which appear to involve a contract that specifically sets forth when the parties shall be bound, to conclude that an obligation for preference purposes cannot

---

[3] The ETC NAESB is attached as Exhibit A. It governs the parties' legal relationship in the purchase and sale of natural gas and is the basis for ETC's claim to which Debtor objects. *See* Claim No. 385; Am. Compl. ¶ 68. It is integral to both the ETC claim and the Amended Complaint objecting to the claim, which permits this Court to consider it in the context of the Rule 12(c) Motion. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); 5C Fed. Prac. & Proc. Civ. § 1371 (3d ed.) (the court may consider documents referred to in the complaint which are integral to the plaintiff's claim without converting the motion into a motion for summary judgment); *Gen. Retail Servs. Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed. Appx. 775, 785 (5th Cir. 2007) (same in Rule 12(b)(6) context); *see also In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment).

arise until a good is delivered. The relevant inquiry here, however, is not what courts in non-analogous situations have ruled, but on (a) Brazos's admissions, (b) the fact that those admissions conform to the terms of the ETC NAESB, and (c) that contrary or alternative allegations do not appear in the Amended Complaint.

8. Next, Brazos contends that ETC has misread the Amended Complaint, which Brazos now says alleges (in the alternative) that the Obligations were incurred on the date the trade was made *or* the date the natural gas was delivered. Opp. ¶ 25. According to Brazos, the Amended Complaint does not equate the date of the agreement to the trade date (*id.* ¶ 4), citing to paragraph 69 of the Amended Complaint which alleges:

> During the Contested Period, the twenty (20) trades at issue were separate and *individual contracts entered into at or near the dates of the trades*, but were not arm's length. Black's Law Dictionary defines "arm's-length" as "[o]f, relating to, or involving dealings between two parties who are not related or not on close terms and who are presumed to have roughly equal bargaining power" (emphasis added). While the Gas Suppliers have argued that Brazos had equal bargaining power to them and could have readily declined to accept the exorbitant prices offered, this is simply untrue. Texas law explicitly recognizes that public utilities have a duty to the public. "Continuous service by a public utility is essential to the life, health, and safety of the public." TEX. UTIL. CODE § 186.002(a) (emphasis added).27 "The primary duty of a public utility, including its management and employees, is to maintain continuous and adequate service at all times to protect the safety and health of the public against the danger inherent in the interruption of service." TEX. UTIL. CODE § 186.002(b).

Am. Compl. ¶ 69 (emphasis added); Opp. ¶ 4. This argument fails for several reasons.

9. As an initial matter, Counts 2 and 3 of the Amended Complaint specifically admit that Brazos's obligations to ETC were incurred on the dates the trades were made.

Count 2:

- "Each Gas Claim was the result of **obligations incurred by the Debtor (i.e., the date of the trade)** within two years before the Petition Date." Am. Compl. ¶ 98 (emph. added).

- "The **obligations to each Gas Claimant were incurred on the date the trade was made** while the Debtor was insolvent, or the Debtor became insolvent as a result of the **obligations incurred (on the date the trade was made)** to each Gas

Claimant. At the time of, or as a result of the **obligations incurred on the date the trade was made** to each Gas Claimant, the Debtor was engaged in, or was about to be engaged in, a business or transaction for which any property remaining with the Debtor was unreasonably small in relation to its business. In addition, at the time the obligations to each Gas Claimant were incurred, the Debtor intended to incur, or believed that it would incur, debts beyond the Debtor's ability to pay as such debts matured." *Id.* ¶ 101 (emph. added).

Count 3:

- "Each Gas Claim was the result of **obligations incurred on the date the trade was made** by the Debtor prior to the Petition Date." *Id.* ¶ 109 (emph. added).

Am. Compl. ¶¶ 98, 101, 109. The statement in paragraph 69 does not counteract or change these unambiguous admissions.

10. Brazos attempts to avoid this conclusion by arguing that both the Proof of Claim and Exhibit B to the Amended Complaint list delivery dates and that "a complaint need not contain magic words." Opp. ¶ 24. Yes, words do not need to be "magic," but they do need to appear in the complaint. And there is not a single instance where the Amended Complaint alleges something other than the Obligations were incurred on the date the trade was made. The fact that one of 13 columns in Exhibit B lists delivery dates (next to a column that lists trade dates) does not support Brazos's argument that it pleaded the Obligations were incurred when the natural gas was delivered.[4] Making mere references to delivery dates in an exhibit does not equate to pleading or pleading in the alternative.

11. The Opposition goes so far as to argue that the Amended Complaint uses the term "trade" as a "generic term" that subsumes both the trade date *and* the delivery date. Opp. ¶ 4. ETC and Brazos, however, did not use the terms "trade" and "delivery" as generic terms in their dealings. The transaction confirmations for the Remaining Contested Trades attached hereto as

---

[4] Brazos complains that ETC did not raise the issue of when the Obligations were incurred in either of its two motions to dismiss. Opp. ¶ 15. ETC, however, cannot contest allegations not raised in a complaint.

Exhibit B (the "Transaction Confirmations")[5] specifically use the term "Trade Date" as the date the parties agreed and became bound and "Delivery Period" for the date on which the gas was physically delivered. Trade date and delivery date are terms of art under the ETC NAESB and Brazos knew the difference between those terms when it filed the Amended Complaint. Brazos should not be permitted to "generically" interchange words to alter its admissions or misconstrue the terms of the contract.

12. Brazos also argues that it has not admitted the Obligations were incurred on the date the trade was made because such a statement is a legal conclusion that must be disregarded in the context of the Rule 12(c) Motion. Opp. ¶ 6. The allegations, however, are not boilerplate recitations of a statute, but specific admissions that the Obligations were incurred when the trade was made – a position admitted by ETC and wholly consistent with the terms of the ETC NAESB. Notably, it was only *after* this Court set February 15, 2021 as the cut-off date and denied Brazos leave to amend that Brazos argued the Court must disregard its admissions so it can argue that the Obligations were incurred at a later date.

13. Both sides agree that the standard for the Rule 12(c) Motion is the same as a motion made under Federal Rule of Civil Procedure 12(b)(6) – Brazos must state a legally cognizable claim that is plausible on its face and in light of the Court's Order. Brazos, however, cannot carry this burden because:

- The Court dismissed Counts 2 and 3 of the Amended Complaint as to any obligations that were incurred before February 15, 2021 and denied Brazos leave to further amend the Amended Complaint;

---

[5] Paragraph 1 of Appendix "1" Special Provisions "A" amended ETC NAESB § 1.2 to include the provision that "[a]ll Transactions are entered into in reliance of the fact that this Base Contract … and all transactions hereunder form a single integrated agreement between the parties." *See also* Transaction Confirmations at 1 (stating that each confirmation constitutes part of and is subject to all of the terms and provision of [the ETC NAESB]." Accordingly, for the same reasons the Court may consider the ETC NAESB in the context of the Rule 12(c) Motion, it may consider the Transaction Confirmations. *See* n.3, *supra.*

- The ETC NAESB, the contract that underlies each Contested Trade, expressly states that "[t]he parties shall be legally bound from the time they so agree to transaction terms and may each rely thereon." This is the date the Transaction Confirmations refer to as the "Trade Date;"

- The Amended Complaint repeatedly admits that the Obligations were incurred on the date the trade was made, i.e., the Trade Date;

- Each Transaction Confirmation and Exhibit B to the Amended Complaint show that ETC's last trade with Brazos occurred on February 12, 2021, well in advance of February 15, 2021;

- Nowhere in the Amended Complaint does Brazos allege that the Obligations were incurred when the natural gas was delivered; and

- Under the Texas Uniform Fraudulent Transfer Act, and consistent with the ETC NAESB, an obligation is incurred, if oral (as were the transaction terms), when it becomes effective between the parties. TEX. BUS. COMM. CODE § 24.007(5)(A).

There is simply no basis for Brazos to allege, for the first time in its Opposition, that its Obligations to ETC arising from the Remaining Contested Trades were incurred on February 15-16, 2021. That allegation does not appear in the Amended Complaint and, even if it did, is contrary to the terms of the ETC NAESB and does not support a claim that the Obligations were incurred on any date other than the date of the underlying trade.

### IV.    THE COURT SHOULD, AGAIN, DENY BRAZOS LEAVE TO AMEND

14.    This Court previously gave Brazos an opportunity to amend its original complaint, was very clear that it was Brazos's last chance to do so, and it held to that ruling in the Order. There is no basis for this Court to reconsider its prior Order and grant Brazos leave to amend yet again. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)) (denial of leave to amend warranted when a plaintiff "fail[s] to cure deficiencies by amendments previously allowed").

## V.     CONCLUSION

As shown in Exhibit B to the Amended Complaint, each Contested Trade between ETC and Brazos was executed on or before **February 13, 2021**, two days prior to the **February 15, 2021** date provided in this Court's Order. Accordingly, the entirety of Counts 2 and 3, as alleged against ETC, were previously dismissed with prejudice and may not be pursued.

Dated: October 14, 2022

Respectfully submitted,

| **KATTEN MUCHIN ROSENMANN LLP** | **YETTER COLEMAN LLP** |
|---|---|
| /s/ *Michaela Crocker* | |
| John E. Mitchell | R. Paul Yetter |
| State Bar No. 00797095 | State Bar No. 22154200 |
| Email: john.mitchell@katten.com | Email: pyetter@yettercoleman.com |
| Michaela Crocker | Bryce L. Callahan |
| State Bar No. 24031985 | Email: bcallahan@yettercoleman.com |
| Email: michaela.crocker@katten.com | State Bar No. 24055248 |
| Yelena E. Archiyan | Ali Shan Ali Bhai |
| State Bar No. 24119035 | Email: asalibhai@yettercoleman.com |
| Email: yelena.archiyan@katten.com | State Bar. No. 24121498 |
| 2121 North Pearl St., Ste. 1100 | 811 Main Street, Suite 4100 |
| Dallas, TX 75201 | Houston, TX 77002 |
| Telephone: (214) 765-3600 | Telephone: (713) 632-8000 |

**COUNSEL TO ETC MARKETING, LTD.**

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2022, a true and correct copy of the above and foregoing was served upon all counsel of record using the Court's electronic filing system.

/s/ *Michaela Crocker*
Michaela Crocker

154677770